# Oil City and Petroleum Bridge Co. *versus* Jackson.

1. Where a corporation in consideration of the franchises granted to it is bound by its charter to keep a road or bridge in repair, it is liable for any injury to a person, arising from want of repair, whether the defect be patent or latent, unless the person injured be in default, or unless the defect arose from inevitable accident, tempest or lightning, or the wrongful act of some third person, of which the corporation had no notice or knowledge.

2. Pennsylvania and Ohio Canal Co. *v.* Graham, 13 P. F. S., 290, followed.

3. In an action by a father against a bridge company to recover damages for the death of his son, seven years old, caused not by the use of the bridge, but by the child's recklessly venturing to walk outside both of the way provided for vehicles and the way provided for pedestrians, upon a gas pipe: *Held,* that though no negligence was imputed to the child, that there could be no remedy, for the company was not bound to maintain such a structure as to prevent the possibility of an accident to a child.

October 5th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Venango county:* Of October Term, 1886, No. 37.

This was an action of trespass on the case brought by W. H. H. Jackson against the Oil City and Petroleum Bridge Company, to recover damages for the death of his son, which he alleged was caused by the negligence of the defendant in not providing and maintaining a safe passage-way for the use of pedestrians. Plea, not guilty.

4 AMERMAN —21

The facts, as they appeared on the trial of the cause, sufficiently appear in the opinion of the Supreme Court.

On the trial the defendant presented the following points:—

1. Upon all the evidence in this case the plaintiff is not entitled to recover.

*Answer.* We submit the question to the jury.

2. If the defendant company had at the time of the accident provided a footwalk for pedestrians on one side of their bridge, and constructed the carriage-way thereof in the same manner in which the carriage-ways of bridges of the same kind—to wit: Howe truss bridges—are usually constructed, by skillful and prudent bridge builders, and the plaintiff's son undertook to go through the carriage-way on foot, instead of passing over the footwalk, and in so doing walked upon the top of a gas pipe extending along the side of the carriage-way at some distance from the floor thereof, and serving as' a wheel guide or protection to the upright timbers, and losing his balance fell therefrom over the edge of the floor of the bridge upon the lower chord thereof, and by some unknown means got off from the said chord into the water beneath and thereby lost his life, then the plaintiff cannot recover.

*Answer.* This point as made with reference to the facts in the case answered in the negative, we submit the question of liability to the jury. (Third assignment of error.)

The plaintiff presented, *inter alia*, the following points:—

5. The rule of law as to mutual negligence on the part of adult plaintiffs and defendants does not apply to the case of a child of tender years, to wit: the age of seven years, who is to be held only to the exercise of that degree of care and discretion ordinarily to be expected from one of that age.

Affirmed. (Fifth assignment of error.)

6. If the jury find from the evidence that defendant built an iron span to the north end of its bridge, and for a while closed the bridge to the public, and in raising the old wooden part to connect with the new iron span, it caused the guards to break loose or become disconnected, leaving a dangerous opening, where the plaintiff's child fell through, it was negligence on the part of the company to open the bridge to the public without first examining and repairing that part which was thus out of repair.

Affirmed if you find the facts as stated. (Sixth assignment of error.)

7. If the jury find from the evidence that at the time when the plaintiff's son fell through the bridge the guard was off, leaving a dangerous opening, that the bridge had been so out of repair for nearly two weeks before the accident, that the manager or superintendent had his office at the end of the

bridge, about thirty rods from said opening, and that the watchman and other employés were also near the place daily, it was negligence on the part of the defendant not to have discovered that said guard was off and repaired it.

Affirmed, if the opening was dangerous without the guard. (Seventh assignment of error.)

8. That the slightest omission of any measure or means to avoid danger, against which human foresight and prudence could guard, will make the company liable for any accident which may be the consequence of it.

Affirmed, if at the time of the injury received the company owed it some duty. (Eighth assignment of error.)

10. The fact that the defendant permitted a gas pipe to be laid the entire length of the roadway of the bridge may be considered by the jury along with other evidence to determine whether or not the defendant was guilty of negligence.

Affirmed. (Ninth assignment of error.)

In the general charge, the court instructed the jury as follows: Taking all the evidence into consideration as to the character of this bridge, its condition at the time of the accident, and the way foot passengers used the carriage-way, we will submit to you the question whether or not the defendant company was guilty of any negligence in not having some person to direct children where and how to go in crossing this bridge. (Fourth assignment of error.)

Verdict for the plaintiff in the sum of $1,175, and judgment thereon; whereupon the defendant took this writ, and filed, *inter alia*, the above assignments of error.

*C. Heydrick* (*William McNair* with him), for plaintiff in error.—While it is undoubtedly true that the question of negligence ought generally to be submitted to the jury, it is equally well settled that " whether a given state of facts, admitted or proved, constitutes negligence, is generally a question of law to be declared by the court": Goshorn *v.* Smith, 11 Norris, 438; P. W. & B. R. R. Co. *v.* Stinger, 28 P. F. S., 219; Hoag *v.* L. S. & M. S. R. R. Co., 4 Norris, 293; Phil. & Reading R. R. Co. *v.* Schertle, 1 Out., 301; Woodbridge *v.* D. L. & W. R. R. Co., 9 Out., 460; Moore *v.* Penn. R. R. Co., 3 Out., 301.

If the boy was not rightfully in the carriage-way, he is to be regarded as a trespasser, notwithstanding his tender years, and neither he, if living, nor his parents, in case of his death, could recover for any misfortune that might overtake him there, except in case of wanton injury. Such is the doctrine of many well-considered recent cases, among which we refer to Gillespie *v.* McGowan, 4 Out., 144; Gramlich *v.* Wurst, 5 Norris,

[Bridge Co. *v.* Jackson.]

74; Cauly *v.* P. C. & St. L. R. R. Co., 2 Out., 498; Gillis *v.* Penna. Railroad Co., 9 P. F. S., 129; P. Ft. W. & C. Railroad Co. *v.* Collins, 6 Nor., 405; B. & O. Railroad Co. *v.* Schwindling, 5 Out., 258.   The rule in such cases as this is that where the negligence or carelessness of the child was the result of the directions or permission or sufferance of the parent, such negligence is contributory, and will defeat an action by the parent for loss of services, except where the defendant's act was wanton or wilful: Pierce on Railroads, 338; Nagle *v.* A. V. R. R. Co,, 7 Norris, 39; Cauley *v.* P. C. & St. L. R. R. Co., 14 Norris, 398; Smith *v.* O'Connor, 12 Wr., 223; Classey *v.* Hestonville, &c. Passenger Railway, 7 P. F. S., 172.

*Isaac Ash* and *F. L. Blackmarr* (*J. W. Lee* with them), for defendant in error.—That this case was rightfully submitted to the jury is well established by the following authorities that show that upon the facts proven the question of negligence therein was for the jury and not for the court:   Penna. R. R. Co. *v.* Ogier, 11 Casey, 60; Phila. and Reading R. R. Co. *v.* Spearen, 11 Wr., 300; Crissey *v.* H. M. and F. Pass. Railway Co., 25 P. F. S., 83; Phila. City Pass. Railway Co. *v.* Hassard, Id., 367; Hydraulic Works Co. *v.* Orr, *et ux.,* 2 Norris, 332; Schilling *v.* Abernethy, 17 W. N. C., 364; Citizens' Pass. R. R. Co., Pittsburg *v.* Foxley, Pitts. Legal Journal, Oct. 14, 1885.

We would not be afraid to rest this case upon the broad proposition that a corporation enjoying the valuable franchise to erect a bridge and take tolls from persons passing over it, is bound to make every portion of the bridge, carriage-way as well as foot-walk, safe for pedestrians exercising ordinary care, especially if the bridge could, as in this case, be made absolutely safe at a cost of a few hundred dollars.   Corporations of this class are held, and rightfully held, to a very high measure of responsibility to the public: Penn. & Ohio Canal Co. *v.* Graham, 13 Smith, 297; City of Erie *v.* Schwingle, 10 Harris, 384; Pittsburg City *v.* Grier, Id., 54; Hydraulic Works *v.* Orr, 2 Norris 332; Schilling *v.* Abernethy, 17 W. N. C., 364.

Mr. Justice PAXSON delivered the opinion of the court, October 18th, 1886.

The defendants' first point called for a binding instruction that, "upon all the evidence, the plaintiff is not entitled to recover."   As the affirmance of the point would have ended the case, the defendant was not entitled to such affirmance if there were any disputed questions of fact which ought to have been submitted to the jury.   In considering this question I desire to say at the outset that we are not disposed to adopt the theory upon which the case was tried below and argued

here, that the defendant owed no duty to the child whose unfortunate death was the occasion of this suit. The defendant company was the owner of the bridge where the accident occurred; it charged and received tolls from those who crossed it; hence, when it allowed foot passengers, adults or children to cross upon the carriage-way, we are not prepared to say that it owed no duty to those who so crossed it. It may be that the duty was not the same in each case; that is to say, that the company would not be held to as strict a rule where a passenger used the carriage-way as where he crossed upon that part of the bridge appropriated to pedestrians.

What is the true measure of the defendant's responsibility? We think it may be found in Pennsylvania & Ohio Canal Company v. Graham, 63 Pa. St., 290, where it was said by Justice SHARSWOOD, after a careful examination of the authorities in this state and elsewhere: " From these cases it may be deduced that, where a corporation, in consideration of the franchise granted to it, is bound by its charter to keep a road or bridge in repair, it is liable for any injury to a person arising from want of repair, whether the defect be patent or latent, unless he be in default, or unless the defect arose from inevitable accident, tempest or lightning, or the wrongful act of some third person, of which they had no notice or knowledge. It matters not that ordinary care was used in the erection or repair of it, and that such work was done under contract by competent workmen." This paragraph is carefully worded, and the rule it lays down sufficiently stringent. By it we propose to test this case.

It being the duty of the company to keep the bridge in repair, it is evident that had the accident been the result of its being out of repair, the company would have been liable, even though such defect was latent, and the company had no knowledge of it. Thus, if there had been a defective plank, or a hole in the carriage-way, and an accident had resulted therefrom, there could have been no question of the liability of the company therefor, even though ignorant of the existence of such defect. To this extent the company may be said to insure the safety of those who cross its bridge.

But there was no evidence that the bridge was out of repair. This accident did not proceed from any such cause. It was not shown that the carriage-way, where the accident occurred, was not safe for vehicles of all kinds to pass and re-pass at will, and for foot-passengers, subject to the danger of injury by passing vehicles. That it contained places where a venturesome child, unattended by a care-taker, might be injured,

was established by the evidence, and was shown by the accident itself.

It appears from the uncontradicted testimony that the plaintiff's two little boys, one seven years of age and the other between five and six, with the permission of their father, started to go from his residence, on the south side of the Allegheny river, to his office on the north side, on the 29th of May, 1882, and that the boys entered the carriage-way instead of the foot-way of the bridge.    The younger child, who appears to have been the less venturesome, objected to going upon the roadway, but the elder insisted, and they entered upon it.   The only knowledge we have of what occurred was the story told by the younger brother.  He said: "We went into the bridge, and Harry got out onto the gas-pipe to walk, and I told him to get off.   I was afraid he would get hurt; so I told him to get off, and he said he did not want to, and then he asked me if I would let him get on again if he would get off, and I said I would not let him get on again, and then he said he would not get off; so I was going ahead of him, and heard him halloo, and I turned around and looked, and I saw him standing slanting, and he was just falling.   I did not see him after that."

In the construction of the bridge there was a hub-rail placed along the sides of the carriage-way at a sufficient height from the floor to protect them from the hubs of passing vehicles. In May 1882, when repairs were being made, a portion of this hub-rail was broken off, and it was contended by the plaintiff that at the time of the accident, it was still off for a distance of eight or twelve feet at the place where the boy fell.   Conceding this to be so, there was a gas pipe some six or eight inches in diameter along that side of the bridge of sufficient height to answer the purpose of a hub-rail.   It also appears that there were open spaces left along the sides of the carriage way, directly over the chords of the bridge.   These spaces were left for the convenient and perhaps necessary examination of the chords, which were some three feet below the floor of the bridge.   At each side and above the chords there was originally a space of about eleven inches, through which anything falling upon the chord might roll off into the river below.   It was alleged by the plaintiff, and we may regard it as found by the jury, that these apertures were so enlarged by the repairs made in May, 1882, that a child falling upon the chord from above would be likely to roll off into the river.

These openings or holes were in such a position that no one, adult or child, would or could get into them in the ordinary course of travel.   They were useful, if not necessary, in order to inspect from time to time the condition of the bridge.   Sub-

stantially similar openings exist on many bridges in this commonwealth, which are regarded as safe bridges, and upon which such an accident has never been known to occur.  We are now brought face to face with the question whether a bridge company is bound to maintain such a structure as to prevent the possibility of an accident to a child.  A venturesome boy, in his natural love of sport, will explore every nook and recess of a bridge, climb upon the timbers, and manage in some way to get through every hole large enough for his body to pass, and is as likely to get down on the piers or upon the roof as any where else.  The case at bar furnishes an illustration of this.  The boy who met with this sad mishap was not content to walk upon the carriage-way, which was safe for all, but insisted upon walking upon a round gas pipe placed some distance above the floor, notwithstanding the remonstrance of his younger brother, who, child as he was, saw the danger.  Of course, no blame is imputed to the boy for this.  It was child-like, and perhaps the very thing I might have done myself at his age, but the question is, has the bridge company been guilty of such neglect as to be liable to the boy's father for his death?  Some little of the responsibility for accidents to children ought to remain upon the parents whose duty it is to look after them and preserve them from danger.  It must not be overlooked that this suit was brought by the father for the loss of his boy.  He was in the habit of crossing this bridge daily, perhaps several times daily, as his house was on one side of the river, and his office on the other.  He must have known the condition of the bridge, and may be presumed to have considered it safe, else he would not have given the permission on the day in question, as he had often done before, to cross it unattended.  It is hardly possible that he had not seen these openings again and again, but he also knew that the bridge was perfectly safe for travel in the ordinary way, while a child might be injured there, as he might have been injured almost anywhere, by courting danger in walking in dangerous places.

Upon a careful consideration of the case we are unable to see any such negligence on the part of the defendant company as to render them liable in this action.  As before observed it was a safe bridge for the ordinary purposes of travel.  The child who was killed was not using it in the ordinary way. He was walking upon the gas pipe where he ought not to have been, and which was so dangerous that his younger brother remonstrated with him, and warned him to get off.  It is not necessary to impute negligence to the child; it is sufficient that he was injured, not as the result of the use of the bridge, but as the consequence of his venturing in his childish recklessness, where no one, child or adult, had any business to be.

We are of opinion that the defendant's first point should have been affirmed.

Judgment reversed.