# CATHARINE GAUGHAN v. THE CITY OF PHILA-DELPHIA.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILA-DELPHIA COUNTY.

Argued March 20, 1888—Decided April 2, 1888.

A boy, seven years of age, climbing in play to reach an awning rod from the top of a pile of empty barrels kept upon the pavement in violation of a city ordinance, slipped and fell to the street and was so injured by one of the barrels falling upon him that he died.   In an action by a parent to recover damages from the city for negligence in suffering the pile of barrels to remain:

*Held*, that, as the improper use of the awning fixtures was the cause of the injury, and not the presence of the barrels upon the sidewalk, it was not error to order a compulsory nonsuit: Oil City & Petroleum Bridge Co. v. Jackson, 114 Pa. 321, followed.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 151 July Term 1887, Sup. Ct.; court below, No. 108 June Term 1886, C. P. No. 3.

On May 12, 1886, Catharine Gaughan brought an action in case against the city of Philadelphia to recover damages for the death of John Gaughan, her son, charged to the alleged negligence of the city.

At the trial on May 2, 1887, before GORDON, J., testimony was introduced on the part of the plaintiff from which the following facts appeared:

The plaintiff with her deceased son, about seven years of age, three other children and their grandmother, lived at 3504 Market street.   Patrick Kelley kept a beer saloon in the adjoining building, and at the curbstone, on the line between the buildings, was a post with an awning rod extending to the wall of the houses.   A lot of barrels, eight or ten in number, were kept by Kelley at his curb line placed on end one barrel on another, the rows being two or three barrels high.   These barrels had been so piled for several weeks continuously.   On

May 26, 1885, John Gaughan, who with his brother and other boys were playing about the barrels, got upon the top of one and was reaching for the awning rod in some manner when the barrel moved away and he fell into the water table with the barrel upon him, receiving such injuries that he died the next morning. At the time of the injury his mother was absent at her work, his grandmother washing a younger child, and the deceased had been out of her sight but a few moments. It further appeared that on September 23, 1864, a city ordinance had been enacted declaring it to be a nuisance "to place or pile empty boxes, barrels, hogsheads or crates on any footway or highway in the city."

At the close of the plaintiff's case the defendant's counsel moved the court to order a compulsory nonsuit, which was so ordered. A motion to take off the judgment of nonsuit was afterwards refused, when the plaintiff took this writ assigning said order as error.

*Mr. T. M. Daly*, for the plaintiff in error:

1. A municipal corporation, having full power to remove a nuisance but neglecting to do so, is liable for injuries caused by such neglect: Whart., Neg., §§ 265, 992; Wood, Nuis., § 254. Encroachments upon highways are nuisances at common law: Wetmore v. Tracy, 14 Wend. 250; Dillon, Mun. C., § 1032; Newlin Tp. v. Davis, 77 Pa. 317; Shear. & Redf., Neg., § 385. Sidewalks are parts of the public streets: Commonwealth v. Passmore, 1 S. & R. 217; P. & B. Pass. Ry. Co. v. Pittsburgh, 80 Pa. 74.

2. It was the duty of the municipality to have the obstruction removed and it is liable for a neglect of the duty whether wilful or not: Norristown v. Moyer, 67 Pa. 355; Reinhard v. New York, 2 Daly 243; Fritsch v. Allegheny, 91 Pa. 227; Dean v. New Milford Tp., 5 W. & S. 545; McLaughlin v. Corry, 77 Pa. 109.

3. It was not claimed that the mother was guilty of concurrent negligence, and the child being of tender years cannot be treated as a trespasser: Hydraulic Works v. Orr, 83 Pa. 332; Gramlich v. Wurst, 86 Pa. 80. That neighboring children would climb upon the barrels was as certain as child nature, and the danger to them was apparent: Rauch v. Lloyd, 31 Pa. 370.

*Mr. Robert Alexander* (with him *Mr. Frank M. Ritter* and *Mr. Charles F. Warwick*), for the defendant in error:

Whether a given state of facts admitted or proved constitutes negligence, is generally a question of law for the court: Goshorn v. Smith, 92 Pa. 438; Moore v. Railroad Co., 99 Pa. 301; Woodbridge v. Railroad Co., 105 Pa. 460; Hoag v. Railroad Co., 85 Pa. 293; P. & R. R. Co. v. Schertle, 97 Pa. 450; P. W. & B. R. Co. v. Stinger, 78 Pa. 219. The facts proved showed that the boy was not injured by the ordinary use of the street, and for the purposes of this case he was a wrongdoer; this being so, his mother cannot recover: Gillespie v. McGowan, 100 Pa. 144; Oil City & Petroleum Bridge Co. v. Jackson, 114 Pa. 321.

OPINION, MR. JUSTICE GREEN:

There were but two witnesses who saw the accident which resulted in the death of the plaintiff's child, and they thus describe the occurrence:

Michael Gaughan: "I am brother of the boy who was killed; brother was up on top of barrels next door on Kelley's pavement. He caught on the awning post to save himself. He was sliding down the awning post and made a grab for it and fell. He was standing on the top highest barrel that was there, then he went and tried to get hold of the awning post and grabbed it with one hand. He grabbed the post with one hand and let go of it to have room to put the other hand on and fell. The barrel that he had been standing on fell down and he fell under it." On cross-examination he said: "I was sitting on one barrel and my brother who was killed was sliding down the post, that is the post between my mother's house and Kelley's house that he was sliding down. He climbed on the barrels to the top of the post, and then he slipped and came down again. He was on the top of the highest barrel, and when he got on to the highest barrel then he reached over to the awning post, and when he had hold of the post he wanted to get room for the other hand. He was up at the top of the post and wanted to get room for his other hand, and he slipped and fell down into the mud gutter. Q. In falling did he hit the barrel? A. No, sir; the barrel slipped from under him, the top barrel fell down towards the gutter and he fell over this and the barrel went on him."

Henry C. Stagg said: "I saw Johnny on top of upper barrel. Johnny was trying to climb the pole, and he slipped and fell down into the gutter and the barrel fell on him. I saw the barrel strike Johnny right across the breast." . . . "At the time he fell down he was holding this way [witness indicating by holding up both hands], he was climbing up to the top, and when he got to the top he slipped off the top of the awning post and went down into the gutter, and as he went down to the gutter the barrel went down and fell on him."

The foregoing testimony was given by the plaintiff, and it constituted the whole of her evidence relating to the actual occurrence of. the accident. Upon the merest inspection it shows that the death of her son was occasioned exclusively by his own wantonly reckless act of climbing up and sliding down an awning post, and swinging himself upon the cross rod connecting the post with the building. In the course of these exercises he lost his hold either upon the post or rod and fell down to the street below, in the gutter, and was killed. How the barrel came to fall upon him is not made clear, but it is perfectly certain that its fall was not due to any ordinary use of the sidewalk as a public highway. The probabilities are he struck the barrel in his fall and toppled it over, but it is not material, as the immediate and direct cause of the accident was the fall from the awning post. This fall was occasioned by his losing his hold either upon the post or the connecting rod.

Now, the post and rod were perfectly lawful structures, such as are in constant use in all parts of the city. To hold the city liable for the consequences of the reckless antics of all the children who choose to make these structures a means of amusement or adventurous exercise, would be establishing a rule of liability never yet heard of. The case is simply destitute of the essential element of negligence on the part of the city. It is certainly not negligence to permit awning posts and connecting rods to be erected in front of buildings so long as they do not interfere with the use of the sidewalks. Yet this permission is the only connection between the city and the immediate cause of the accident. Moreover, the principle stated in the case of Oil City & Petroleum Bridge Co. v. Jackson, 114 Pa. 321, is directly applicable. The boy was in a place where

he had no right to be. The awning post and connecting rod were not designed for the use to which he was putting them. He had no occasion of any kind to be there, and his being there at all was a source of manifest and imminent danger. In the Bridge Case above referred to the boy was on the bridge and crossing it, which he had a right to do. The means of his death was an open space at one side of the roadway, but in the floor of the bridge. He did not choose to use the roadway which was perfectly safe, but walked on an iron pipe which was over the opening in the floor, and while doing so he fell off the pipe and through the opening and was killed. We held the bridge company to be free of liability because the pipe was not intended for use as a passage way, the boy had no right to use it for such a purpose, and the roadway provided was amply sufficient and entirely safe. In the present case the facts are far stronger against liability of the city, because the structure was in no possible sense a part of the highway and was not designed in any circumstances for the use to which it was being put when the accident occurred. The presence of the barrels on the sidewalk was not the cause of the injury, and the fall of the top barrel would have been harmless if the boy had not already fallen into the gutter by losing his hold upon the awning post or connecting rod.

Judgment affirmed.