MARY RODGERS v. JOSEPH LEES ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 2, 1891—Decided March 9, 1891.
[To be reported.]

1. It is settled by abundant authority that, to enable a trespasser to recover for an injury, against the owner of the property he was trespassing upon, he must do more than show negligence: it must appear that there was a wanton or intentional injury inflicted on him by the property-owner: Gillespie v. McGowan, 100 Pa. 144.

2. That a child of tender years may be a trespasser and be subject to the consequences of his trespass, so that it may preclude recovery for his injury or death even though negligence be not imputable to him, has been decided so often and in such varying circumstances that the question is no longer open to discussion.

(a) The defendants maintained at their mill a hoisting apparatus operated by steam, consisting of a cable wound up and unwound by a drum projecting from the side of the mill over an adjoining street, and used for raising and lowering goods. At the end of the cable was an iron ball, and below that iron hooks for attaching the goods.

(b) While the cable was in motion, though not in actual use for hoisting or lowering goods, a boy between six and seven years of age, who was upon the street, got on the ball with the intention and for the express purpose of riding up on it, in disregard of the warning of a companion. After riding up some distance he fell and was killed:

3. As the death of the boy was caused solely by his own rash and reckless

Statement of Facts.

act, while in a place where he had not the least right to be and where he was a trespasser in every sense of the word, there could be no recovery therefor: Hydraulic Works Co. v. Orr, 83 Pa. 332, distinguished, as authority only upon its own facts.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 400 January Term 1890, Sup. Ct.; court below, No. 165 October Term 1889, C. P.

On September 23, 1889, Mary Rodgers brought trespass against Joseph and John S. Lees, trading under the firm name of James Lees & Sons, to recover for alleged negligence of the defendants, causing the death of the plaintiff's minor son. The defendants pleaded not guilty.

At the trial on March 19, 1890, the plaintiff presented testimony tending to establish the following facts:

The defendants owned and operated a woolen mill at Bridgeport, Montgomery county, situated at the corner of Fourth and Coates streets. The latter street was open to the public, but was used little, if at all, by any one not connected with the defendants' mill. Upon the Coates street front of their mill, the defendants maintained certain apparatus used for hoisting materials to the upper floors of the building from the street, and lowering their manufactured product into the street when ready for shipment. The apparatus consisted of a covered projection from the top of the fifth story, in which were placed a drum and a system of pulleys, and from which a wire rope or cable descended to the ground, being wound up and unwound by steam power. To keep the cable taut while descending without a load, an iron ball, eight or ten inches in diameter, was fastened at the lower end of it. Below the ball was a chain about a foot long, to which were appended two hooks used for attaching the cable to the goods to be raised or lowered. When the cable was let down, the ball rested on the street about two and one half feet from the building line of the mill.

The machinery was controlled by an iron rod on the inside of the mill, running from the ground floor to the top, and so arranged that, by pulling the rod, a person on any floor could start and stop the machinery, cause the cable to ascend or descend, or cause the ball and hooks to stop at any of the floors.

Several witnesses testified for the plaintiff that the machinery was so arranged as to " knock off " and automatically stop, whenever the ball reached either the top or the bottom of the course through which it moved, but that sometimes the arrangement for effecting the automatic stoppage was out of order, and then the cable, after once being started, would keep in motion, successively ascending and descending until some one in the mill would stop it by means of the controlling rod.

On the evening of June 7, 1889, between six and seven o'clock, the plaintiff's son, Daniel Rodgers, about six years old, while passing along Coates street, met John Kinney, a boy about four years older, in front of the defendants' mill. At the moment of their meeting, the ball was descending and near the ground. Rodgers said to Kinney, " Hello, Kinney, I bet I can go up higher on the ball than you." Kinney remonstrated, telling Rodgers that he would fall; but when the ball reached the ground, Rodgers got upon it, putting his legs around it, holding to the rope, and the ball starting up again, he was carried up with it. After it started he tried to get off, but was unable to do so at once, and was carried to the level of the third story of the mill, when his hold loosened and he fell to the ground, the fall resulting in his death. Kinney testified that he thought the hook underneath the ball caught in Rodgers' clothing, and prevented him from getting off before the ball got high above the ground.

Testimony for the defendants tended to show that the hoist was in use a few moments before the accident, but had been stopped, leaving the ball hanging at the level of the third story, and that the men who had been using it had gone away, after closing up the doors in the upper stories; that the hoist was a machine of a standard make, such as was used in other mills, and that it was arranged with reference to the street in the customary manner; that the automatic attachment for reversing the motion was so arranged that it could be adjusted to operate either when the ball was at the top or at the bottom, but could not be adjusted at one time so as to reverse both at the top and at the bottom. The witnesses, who testified that the ball had been stopped, stated that they were unable to account for its being in motion at the time of the accident, but that somebody must have started it, as when it was once brought to a dead stop the machinery could not start of itself.

Charge of Court below.

At the close of the testimony, the court, SWARTZ, P. J., charged the jury in part as follows:

First, was there negligence on the part of the defendants? The hoisting machine was put into mill No. 6. I charge you that it was not negligence to construct this hoisting apparatus in mill No. 6. The uncontradicted evidence shows that it is an apparatus that is in common use, and is approved by the experience of those who have knowledge of its working, and therefore, when these defendants availed themselves of the use of this machinery, they were not guilty of any negligence. If they are guilty of any negligence in this case it is not by reason of the construction of the machine, and not by reason of placing the machine and its appliances where they did place it. If there is any negligence in this case, it must be in the operation of the machine, without giving it proper attention or supervision.

What was the character of the operation of this machinery, the traveling of this cable, upon the seventh day of June last, when Daniel Rodgers came there, and, as it is said, meddled with the cable? According to the evidence of his companion, the ball was coming down. He says it was a few feet from the ground when he first saw it, and that it then came down, and Daniel Rodgers sat upon the ball; that then it rested for a minute, I think, as he described it, and then began to ascend. The little boy that was killed remarked, "I will bet that I can ride up higher on this ball than you can." You will say from this testimony whether this cable was not at this time, when the boy came there, coming down and again ascending, after the ball struck the ground. You will take all the testimony in this case in determining what was the manner in which the cable operated at that time. The defendants were bound to have regard to the thoughtless tastes and traits of childhood. You will say whether the defendants, as prudent and cautious men, ought to have foreseen that there was a reasonable probability that children of tender years, unable to apprehend danger or to avoid it, by reason of their incapacity, would meddle to their injury with this hoisting machine, if the cable were suffered to run slowly to the alley and then reverse itself and return in the same manner. If it was their duty to have foreseen this, then you will say whether they were neg-

Charge of Court below.

ligent, if they suffered the apparatus to be thus operated without being attended by themselves or their employees who were in charge of the machine.

It matters not how careful the defendants may have been in their instructions to their employees. If those entrusted with the running of the machine failed to regard the instructions and were negligent in the operation of the machinery, such negligence would be chargeable against the defendants. If you find that this cable was descending and by its own motion returning, when the little boy was brought in contact with it, you will say whether that was dangerous to children that might meddle with the machinery. Was it the duty of these defendants to foresee that an injury might happen to children who would meddle with it? If you find it was their duty to foresee this, and that this cable was traveling down and then ascending again, you will say whether they ought to have attended it, or whether some one in their employ ought to have had supervision over it, so that if it was dangerous and likely to do injury, those brought in contact with it, such as little children, might be protected.

If you find that this ought to have been done, your next inquiry will be, did they give it that supervision and attention? In order to ascertain this, you will scrutinize carefully all the testimony in this case. The defendants say that they were not responsible for the descending of this ball and its ascending; that through their employees they guarded it carefully; that, when they were through in their use of it, the employees at the third door of the building put on the brake and fastened it firmly ; and that, therefore, even if you should find that it was negligence to have it run down and then return again, without the supervision of any one, they are not accountable for the failure to have some one there ; that they did all that could be reasonably expected of them.

I charge you that even if you should find that it was their duty to have supervision over this machine, as it descended upon the ground and ascended again of its own motion, they would not be responsible if they exercised proper supervision when the cable had this motion ; and if they, through their employees, fastened it, as the defendants' witnesses swear it was fastened, you will say whether that was not all that could

be done to protect it and keep it safely. If it was locked, or if the brake was put on, the testimony is that it could not be started without an application to the rod that ran from one end of the building to the top; that a bale of a thousand pounds or more might hang attached to it, and still it would remain fixed unless power were applied to the rod connected with the machinery. You will say, therefore, if they put this brake on through their employees, whether they did not do all that it was reasonable to expect of them, whether there was any negligence if they did this. Is there anything else pointed out by which they could have put it in a safer condition? If not, then I charge you that if they and their employees locked the machinery, that is, put on the brake in this way, they could not be held responsible for negligence. If, however, after it had been thus fastened, those in their employ who had charge of this machinery were again to put it in operation, of course they would be liable for such operation. You will say how this machinery got into operation upon that evening. Why was it that this cable was traveling down and returning, if you find it was so traveling? Were the defendants in any way responsible for its traveling in that manner, and if they were, did they exercise proper supervision that no injury should happen? If it was their duty, did they exercise proper supervision, and were they guilty of any negligence in not giving it proper supervision? They were not required to so keep it that nobody could be hurt by it. That is a degree of duty that is not required of any one, but they were required to exercise the care, prudence and caution that a reasonable man under similar circumstances would have used.

The plaintiff says and contends that those in charge of this machinery did not properly secure it; that this is shown by the fact that within a short time after the employees had left the machinery, the ball was found down upon the ground or near the ground, and that all the facts and circumstances in this case show, and that you are so to find, that those in charge of the machinery did not properly protect it. You are to say whether the evidence establishes to your mind that such was the case. If the weight of the evidence establishes to your mind that this contention on part of the plaintiff is made out, and you find it was negligence, then, although it was the act

Arguments.

of an employee having charge of this machine, the defendants would be liable. . . . .

There are several points that the defendants ask me to charge upon.

1. That the plaintiff's son was a trespasser, when he undertook to see how far he could ride on the ball of the elevator, and hence the plaintiff cannot recover.

Answer: This is refused.[1]

2. That negligence cannot be assumed; it must be proved.

Answer: This is true.

3. That there is no evidence of negligence on the part of the defendants, in the use of the elevator, and hence the verdict must be for the defendants.

Answer: This is refused. This is a matter for you under the charge of the court.[3]

4. That if the rope and ball of the elevator were let down by some one not in the employment of the defendants, or by an employee outside of the scope of his employment, the verdict must be for the defendants.

Answer: This is true, as I have already endeavored to state to you.

8. That, under all the evidence in the case, the verdict must be for the defendants.

Answer: This is refused. This is a matter entirely for you.[2]

—The verdict of the jury was in favor of the plaintiff for $450. Judgment having been entered the defendants took this appeal, assigning for error:

1–3. The answers to defendants' points.[1 to 3]


*Mr. Charles Hunsicker*, for the appellants:

While it must be conceded that a child so young as the one in question cannot be chargeable with contributory negligence, the authorities clearly show that children of his age may be trespassers, and subject to the rule of law which precludes recovery for an injury received in consequence of an act of trespass: Gillespie v. McGowan, 100 Pa. 144.; Baltimore etc. R. Co. v. Schwindling, 101 Pa. 258; Phila. etc. R. Co. v. Hummell, 44 Pa. 375; Flowers v. Railroad Co., 69 Pa. 210; Duff v. Railroad Co., 91 Pa. 458; Cauley v. Railroad Co., 95 Pa. 398; s. c. 98 Pa. 498; Hestonville Ry. Co. v. Connell, 88 Pa.

520; Moore v. Railroad Co., 99 Pa. 301; Oil City etc. Br. Co. v. Jackson, 114 Pa. 321; Gaughan v. Philadelphia, 119 Pa. 503. Hydraulic Works Co. v. Orr, 83 Pa. 332, is virtually overruled by Gillespie v. McGowan, supra, but in any event it has no bearing upon the case at bar, because the hoist was perfectly harmless and no one could sustain any injury by its operation.

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson*), for the appellee:

1. The defendants' counsel has illogically reached the conclusion that there can be no recovery, because, in this case, the boy was a trespasser. The true rule is that which is stated in 4 Am. & Eng. Ency. of Law, 53, as follows: " A child injured, while trespassing, has no right of action, unless injured by the negligence of defendant when the injury might have been avoided by ordinary care on defendant's part. But when a child of tender years commits a mere technical trespass, and is injured by agencies that to an adult would be open and obvious warnings of danger, but not so to a child, he is not barred from recovering, if the things instrumental in his injury were left exposed and unguarded, and were of such a character as to be likely to attract children, excite their curiosity, and lead to their injury, while they were pursuing their childish instincts. Such dangerous and attractive instrumentalities become an invitation by implication."

2. The rule as stated is sustained by the following among other authorities: Phila. etc. R. Co. v. Spearen, 47 Pa. 300; Smith v. O'Connor, 48 Pa. 220; Kay v. Railroad Co., 65 Pa. 269; Schilling v. Abernethy, 112 Pa. 437; Biddle v. Railway Co., 112 Pa. 551; Lynch v. Murdin, 1 Q. B. 29; Woodbridge v. Railroad Co., 105 Pa. 464. The authorities show that the vital distinction between the class of cases relied on by the defendants, and the class to which the case at bar belongs, has been misapprehended. In each of the cases cited by the defendants, it was held that the accident was due, not to any negligence of the defendant, but solely to the unlawful trespass of the child. If the mere fact of trespass is to rule each case, without regard to anything else, every distinction between adults and little children is broken down, and the latter are

no longer afforded any protection. This is repugnant to every human impulse. The question in each case is, was the injury due to the established negligence of the defendant? Did he, under the circumstances, owe a duty which was unperformed?

3. The case at bar presents a state of facts which demonstrates the wisdom of the law in throwing the shield of legal protection around little children. The defendants were making a most unlawful use of a public street, when they permitted this hoisting machine to be out of order, and to run unattended and unguarded. It was an alluring thing to any little boy of playful spirit. Its condition and operation held but an inducement and invitation to any child to do just what this boy did, and it was the duty of the defendants to expect that children passing along the street would act upon childish instincts and impulses, and to take precautions accordingly: Powers v. Harlow, 53 Mich. 507 (51 Am. Rep. 154). Hydraulic Works Co. v. Orr, 83 Pa. 332, has not been overruled by later decisions; it has only been distinguished from cases unlike it. We have not rested upon that case, as the facts in our case are much stronger. There the death-trap was upon the defendants' premises in a private driveway, and there was a clear trespass by the boys; here, it was exposed upon the open street, and the boy's presence on the street was lawful.

OPINION, MR. JUSTICE GREEN:

If the chain and ball at the defendants' mill had been running regularly in the actual business of raising or lowering grain or flour, and the plaintiff's son had jumped upon the ball to ride up in the air, and fallen, it certainly could not be held that the defendants would be liable for the consequences. They would have been in the lawful prosecution of their business, with an apparatus proper for such uses, and owing no duty of protection to passing children against the consequences of their reckless acts in rushing into so manifest a danger. So, if a boy of tender years attempts to climb upon a train of cars while in active movement, regardless of the dangerous results likely to ensue, and is injured, he certainly cannot recover damages from the company upon the theory that he cannot be guilty of contributory negligence. If, in the present case, the chain and ball had not been in motion, but were at

rest, and the boy had jumped upon the ball precisely as he did, and his act had set the chain to running, and started the ball upward, there would be plausibility in the argument for a recovery that the boy was ignorant of the effect of his act. The case then, would perhaps have come within the decision of this court in the case of Hydraulic Works Co. v. Orr, 83 Pa. 332. That decision was put expressly upon the ground that there was nothing to indicate the dangerous character of the platform, which was so placed that it was liable at any moment to fall, and crush children beneath it like mice in a dead-fall. In the case of Gillespie v. McGowan, 100 Pa. 144, we said that that case "was decided upon its own peculiar circumstances," and we also said "it was not intended to assert the doctrine that a child cannot be treated as a trespasser or wrong-doer; and so far as it appears to sanction such a doctrine it must be considered as overruled." We also said, "Hydraulic Works Co. v. Orr is authority only for its own facts." We further said: "It is settled by abundant authority that, to enable a trespasser to recover for an injury, he must do more than show negligence. It must appear there was a wanton or intentional injury inflicted on him by the owner."

That a child of tender years may be a trespasser, and be subject to the consequences of his trespass, has been decided by this court so many times, and in so many varying circumstances, that the question is no longer open to discussion: Phil. etc. R. Co. v. Hummell, 44 Pa. 375; Flower v. Railroad Co., 69 Pa. 210; Duff v. Railroad Co., 91 Pa. 458; Cauley v. Railway Co., 95 Pa. 398; s. c. 98 Pa. 498; Hestonville Ry. Co. v. Connell, 88 Pa. 520; Moore v. Railroad Co., 99 Pa. 301; Balt. etc. R. Co. v. Schwindling, 101 Pa. 258; Gillespie v. McGowan, 100 Pa. 144; Oil City etc. Bridge Co. v. Jackson, 114 Pa. 321; McMullen v. Railroad Co., 132 Pa. 107.

In Cauley v. Railway Co., 98 Pa. 498, we held that where a boy seven years old, who was playing upon a sand-car, was ordered off the car by the conductor while the car was moving slowly, and in getting off was injured, there could be no recovery. When the case was first heard in this court, reported in 95 Pa. 398, we said: "In regard to the suit brought for the child by his father as his next friend, it is sufficient to say that, the child being unlawfully upon the car, the defendant company

owed it no duty, and is not liable for the injury." In Heston-ville Ry. Co. v. Connell, 88 Pa. 520, where a child six years and nine months old was injured in attempting to get on the front platform of a car while in motion, we held there could be no recovery. Mr. Justice GORDON, in delivering the opinion, said : " Nevertheless, it may be assumed that a child old enough to be entrusted to run at large has wit enough to avoid ordi-nary danger, and so persons who have business on the streets may reasonably conclude that such a one will not voluntarily thrust itself under the feet of his horses, or under the wheels of his carriage : a fortiori may they conclude that they are not to provide against possible damages that may result to the infant from its own wilful trespass." In the case of Moore v. Rail-road Co., 99 Pa. 301, a boy of ten years was walking along the track on the sleepers, and was run over by a passing train and killed. We held there could be no recovery, because he was a trespasser. We said : " The circumstance that the trespasser in this instance was a boy ten years of age, cannot affect the application of the rule. The defendants owed him no greater duty than if he had been an adult. They are not subject to an obligation to take precautions against any class of persons who may walk on and along their tracks." In Oil City etc. Bridge Co. v. Jackson, 114 Pa. 321, a boy of seven years, while cross-ing upon defendant's bridge, got upon a gas-pipe, five inches in diameter, at a place where there was an opening in the floor, and while walking on the pipe fell into the river below and was drowned. We held there could be no recovery. Mr. Justice PAXSON, delivering the opinion, said : " The child who was killed was not using it (the bridge) in the ordinary way. He was walking upon the gas-pipe, where he ought not to have been, and which was so dangerous that his younger brother remonstrated with him, and warned him to get off. It is not necessary to impute negligence to the child ; it is sufficient that he was injured, not as the result of the use of the bridge, but as the consequence of his venturing in his childish reck-lessness where no one, child or adult, had any business to be."

These principles are precisely applicable to the present case. The chain and ball were not at rest; they were in actual motion, and the boy, fully knowing that and intending to do exactly what he did do, jumped upon the ball for the very

purpose of riding upward on it.   The boy who was with him, and who testified for the plaintiff, said :

" The ball was down.   When both of us met he said : ' Hello, Kinney; I bet I can go up higher on the ball than you.'   I told him he had better not, he would fall.   I did not hear him say anything then.   He got on the ball, and sat on the ball, and held the chain.   Then when he was going up he tried to get down.   He got down from the ball, and the hook catched him, —I think that the hook catched him,—and then when he was going up higher the hook gave way when he was going up. Then he hung with his hands on the ball.   Then Tom Mc-Cormick came out of the door of the mill, and when he saw the boy going up he ran to leave the ball down.   Then the boy fell before he had time."

It is thus fully proved by the plaintiff, and not contradicted, that the boy got upon the ball for the express purpose of riding up on it, and notwithstanding his companion warned him not to do it, saying he might fall.   His death was caused solely by his own rash and reckless act while in a place where he had not the least right to be.   Of course he was a trespasser, in every sense of the word.   The ball and chain were not used for any pur-pose of conveying persons up or down, and the case is therefore stronger than either Cauley v. Railway Co. or Hestonville Ry. Co. v. Connell.   We can see no reason why the principle of those cases is not strictly applicable to this, only in a greater degree. And the doctrine of Balt. etc. R. Co. v. Schwindling, Phil. etc. R. Co. v. Hummell, and Oil City etc. Bridge Co. v. Jackson, that the boy was in a place where he had no right to be, and where he was not entitled to any protection from the defendants against his own reckless trespass, is, if anything, still more applicable.   In the Oil City Bridge case the boy had a right to be on the bridge for the purpose of crossing it, and in the Schwindling case the boy was not necessarily a trespasser by being on the platform ; but here the trespass was absolute, and very gross.   There was no right, or justification, or excuse of any kind for the pres-ence of the boy, or of any other person, on the ball for any pur-pose whatever, much less for the purpose of riding on it.   In point of fact, the ball and chain had been in use for hoisting up material until almost the moment of the accident.   One of the men was still in the mill.   A number of the defendants'

hands testified that the ball was stopped, and hung up out of reach, but in some way they could not account for, it had got in motion again, showing that the ball was not carelessly left dangling and in a condition to move. In this momentary interval, it happened that the plaintiff's son came along and jumped upon it. Upon the whole case, we think the defendants' first and second points should have been affirmed.

Judgment reversed.

Mr. Justice CLARK noted his dissent.

