# McHugh et ux., Appellants, *v.* Reading Company.

Argued January 6, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Sabato M. Bendiner,* with him *Thomas P. Cleary,* for appellants.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 29, 1943:

A bridge carries the tracks of defendant railroad company over Hunting Park Avenue in the City of Philadelphia, being supported at each corner of its intersection with the street by a concrete abutment. The southeasterly abutment rises to a height of twenty-four feet, and is capped by an ornamental concrete cornice, about two and a half feet across, hollowed out in a scroll formation which, because of its fancied resemblance to an ornate chair, is known to children in the neighborhood as "the king's throne." The abutment descends from this cornice in two concrete steps, each three feet in height, and continuing from the lower of these and parallel to Hunting Park Avenue there is a stone wall twenty-six feet long, with a top slab two and a half feet in width. For many years it was the custom of the children to walk along this slab (gaining access to it from a flight of wooden steps which ran by its southerly end at right angles to the street), mount the two steps of the adjoining abutment, and climb onto the "throne," where they sat and played games. There is a wire fence inside of and parallel to the wooden steps, and had it been extended a few more feet toward the street it would have prevented access from the steps to the top of the wall and therefore to the abutment, although, even in that event, the "throne" would have been accessible from other directions.

Toward the close of a summer day a child six years eight months old, daughter of the plaintiffs, who had finished her first year at school and was described as being "awfully bright", climbed on the wall from the wooden steps and then onto the abutment. She was accompanied by two other children, one six and one ten years of age. She seated herself on the "throne", the other children taking positions lower down. When, afterwards, she started to descend, she lost her footing, fell to the street below, and was killed. Plaintiffs brought suit against the Reading Company to recover damages, their theory being that the scroll formation of the cornice lured children into climbing to the top of the abutment, and the company should, by an adequate fence or other safeguard, have prevented their doing so. The court entered a judgment of nonsuit.

We have not been referred by counsel to any Pennsylvania case, nor has our own research disclosed any, in which recovery was allowed against the possessor of land, even though a permissive playground, where a child was injured merely by falling or jumping from a stationary object or structure on the property.* Liability to trespassing children has uniformly been limited to accidents arising from latent dangers, such as unguarded machinery, live wires, pits or open trap doors. This distinction results from one of the conditions of liability set forth in the Restatement of Torts, §339, clause (c), that "the children because of their youth do not . . . realize the risk involved . . ." In the comment (p. 925) on this clause the Restatement says: "A possessor of land is . . . under a duty to keep so much of his land as he knows to be subject to the trespasses of young children free from artificial conditions which in-

---

* In *Bonczek v. Philadelphia*, 338 Pa. 484, 13 A. 2d 414, recovery was had where a seven-year-old girl fell from a dilapidated bench on which she was playing and was injured by the penetration into her body of an iron rod, three-eighths of an inch in diameter, which protruded three inches from one of the concrete supports of the bench and constituted a peculiar and unrealized danger.

volve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger." This principle has been applied in our own cases, as, for example, *Oil City and Petroleum Bridge Co. v. Jackson,* 114 Pa. 321, 6 A. 128; *Rodgers v. Lees,* 140 Pa. 475, 21 A. 399; *Brown v. Scranton,* 313 Pa. 230, 169 A. 435; *Dolena v. Pittsburgh Terminal Coal Co.,* 324 Pa. 228, 188 A. 112; see also *Krystopowicz v. Reading Co.,* 40 D. & C. 304.

No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct. Certainly a normal child nearly seven years of age—indeed any child old enough to be allowed at large —knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because, to use the language of the Restatement, of their "immature recklessness", but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type.

In *Kayser v. Lindell,* 73 Minn. 123, 75 N. W. 1038, a child climbed in play upon a seven-foot wall, fell off and was injured. The court said (p. 126, N. W. 1039): "It is true that, if the owner of premises keeps upon them a concealed trap, and a person coming upon the premises by invitation is injured thereby, he may recover. But there was no mantrap in this case. The wall was plain to be seen. The child knew it was there, and fell off of it in the daytime. While the owner of premises may owe more duty to a child than to an adult coming upon his prem-

ises by implied invitation, yet he is not bound to guard every stairway, cellarway, retaining wall, shed, tree, and open window on his premises, so that such a child cannot climb to a precipitous place and fall off."

In *Coon v. Kentucky & Indiana Terminal R. R. Co.*, 163 Ky. 223, 173 S. W. 325, a boy fell from a fifteen-foot wall. The court said (pp. 226, 227, S. W. 327) : "It could hardly be said that a retaining wall like the one in question is dangerous. It is not like a stack of lumber composed of separate pieces that are liable to fall at any time. On the occasion of the accident, it did not fall or break. The only sense in which it could be said to be dangerous is that it was easy to climb, and easy to fall from; but, for that matter, so is every tree, every pole, every fence, every ladder, every railing or set of steps, that the owner may have about his premises."

In *Sanders v. Baird*, 195 Ark. 535, 112 S. W. 2d 966, a boy fell seven feet to the ground from one of the crosspieces of a signboard. The court said (pp. 539, 540, S. W. 2d 968) : "The signboard did not hurt appellant and neither did it cause him to fall and hurt himself. He fell by climbing upon one of the braces. . . . The trees in the grove mentioned in the complaint were just as much an attractive nuisance as was the signboard. Indeed, they would appear to be more attractive to climb upon, and they would be just as dangerous in case of a fall."

In all these instances the place where the injury occurred had become a permissive playground for children, but it was nevertheless held that the person in possession of the land was not responsible. If the range of liability in the so-called "attractive nuisance" cases were to be extended to a situation such as that here presented, the law would cease to be in harmony with the practical considerations which properly govern community life.

Judgment affirmed.