Jesko *v.* Turk et al., Appellants.

Argued November 9, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF-MAN, JJ. (FLOOD, J., absent).

*Kim Darragh*, with him *Meyer, Darragh, Buckler, Bebenek & Eck*, for appellants.

*James R. Duffy*, with him *McArdle, Harrington, Feeney and McLaughlin*, for appellee.

OPINION BY ERVIN, P. J., December 16, 1965:

This is an appeal by the defendants from judgments entered in favor of the minor plaintiff and his mother in a trespass action based on a fall by the minor plaintiff from a wall of a building which was being constructed by the defendants. The judgments must be reversed.

The facts as stated by McKENNA, JR., J., in the opinion of the court below are: "The litigation arose out of a fall by a nine-year old boy from the wall of a building which was being constructed by Ellis Construction Company for Lee Pitler at the corner of Sem-

ple and Cable Streets in the Oakland district of Pittsburgh, Pennsylvania.

"The minor plaintiff lived at 3615 Dawson Street, about one block from the scene of the accident. At twilight on the evening of March 12, 1961, he went to visit a friend who lived in the vicinity. His friend was not at home. While returning to his residence he passed the construction area and decided to climb on a partially erected wall of the building. The wall was constructed of concrete block, and at its highest point was approximately twelve (12) feet high. Plaintiff climbed for some distance. As he neared the top of the wall, he felt that the blocks were loose beneath his feet. He took one or two more steps, turned around, and began to descend the wall. As he did so, one of the blocks fell from beneath him, and he lost his balance. While falling, plaintiff attempted to get a handhold on the top of the wall, but those blocks also gave way and he fell to the ground.

"Neil Jesko testified that he had seen other children playing on and around the building previously, though he himself had never done so.

"The contractor, Ellis Construction Company, was engaged in general construction and remodeling work. In 1961 it was organized as a partnership, with defendants Turk and Sife as partners. Ellis had no employees of its own, but did all of its work through subcontractors. Its contract with Lee Pitler called for the remodeling of an existing building, and the erection of a one-story building on an adjacent lot to house a laundromat. It was from this new structure that Neil Jesko fell.

"One of Ellis' partners, Abe Turk, testified at trial that children had previously trespassed on the property, and, in fact, had done some damage by pushing over sections of newly laid brick or block. Ellis erected no barriers, and employed no guard or watchman.

Turk did, however, ask one of his subcontractors to keep an eye on the property in the evening and on weekends. The police had also been requested to cruise the area.

"This case was instituted on January 31, 1963, against the owner, Pitler, and the contractor, Ellis. It came to trial on February 4, 1965. A compulsory nonsuit was entered in favor of Pitler at the close of plaintiffs' case, but Ellis' Motion for a nonsuit was refused. The jury returned a verdict against Ellis, awarding $5,-000.00 to the minor plaintiff, and $718.45 to his mother. Defendant filed a Motion for a New Trial but has since abandoned it."

The court below dismissed the motion for judgment n.o.v. and judgments were entered on the verdict. The defendants appealed.

Both parties and the court below agree that the law governing this case is set forth in §339 of the Restatement of the Law of Torts, which they quote as follows: "§339. Artificial Conditions Highly Dangerous to Trespassing Children.

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."[1]

It is to be noted that the liability of a possessor of land is not absolute. As was said in *Hyndman v. Pa. Railroad Co.*, 396 Pa. 190, 152 A. 2d 251: "There is no duty on the owner or possessor of land to make a dangerous condition 'child proof' " and "There is no question but that the appellees had to satisfy all four [now five] subsections of Section 399 (sic) in order to recover."

Subsection (c) reads: "the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it."

Thus an important factor is the age of the child and his ability to realize the danger confronting him. In comment j of the Restatement it is said: "There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it.

---

[1] In this connection we call attention to the fact that on May 25, 1963 and May 22, 1964, the American Law Institute adopted and promulgated revisions of the Restatement of the Law of Torts, including §339, in which the language was slightly modified and a new subparagraph added as follows: "and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." We do not believe that these modifications affect the issue before us.

"Where, however, the possessor knows that children too young to appreciate such dangers are likely to trespass on his land, he may still be subject to liability to such children under the rule stated." The Pennsylvania cases are in accord.

In *McHugh v. Reading Co.*, 346 Pa. 266, 269, 30 A. 2d 122, it was said: "No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct. Certainly a normal child nearly seven years of age—indeed any child old enough to be allowed at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because, to use the language of the Restatement, of their 'immature recklessness', but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type." The *McHugh* case was cited and followed in *Roche v. Pa. Railroad Co.*, 169 Pa. Superior Ct. 48, 82 A. 2d 332.

We believe that the present case is controlled by *Dragonjac v. McGaffin Construction & Supply Co.*, 409 Pa. 276, 186 A. 2d 241. There, the minor plaintiff, who was ten years and seven months of age, fell from a foundation wall for a new school which was being constructed by the defendant. Mr. Chief Justice Bell, who wrote the opinion for the Court, said, at page 278: "If plaintiff can recover in this case, every owner of property, no matter how very small, would have to barricade his property or become an insurer. This is certainly not the law." And again at page 280: "If defendant is liable in this case, the necessary result would be that every owner of property, no matter how small, will have to erect a high barricade around his property and if he fails to do so a jury could find a verdict for

trespassing children, i.e., every adventurous American boy who went on his property to recover a football or a baseball or basketball or soccer ball, or to inspect and be injured in a new attractive device for opening and closing a garage door, or to discover what was in the opening to his coal bin, or climbed an old or slippery apple tree to examine or rob a bird's nest, or tripped over an irregular stone on his stone walk or in his (her) rock garden. This would obviously be very unfair and unjust to home owners.

"Furthermore, to allow recovery in this case would not only be contrary to the existing law hereinabove set forth but would carry the doctrine of attractive nuisance to extremes that would be absolutely ridiculous."

See also *Powell v. Ligon,* 334 Pa. 250, 256, 5 A. 2d 373, where it was said: "In the instant case defendants and all others engaged in like business must in the normal course of their business excavate numerous long ditches. To require them to fence in all such areas or to take other precautions to protect trespassers would involve a prohibitive expense and would unduly impede them in the efficient carrying out of their work. The imposition of such an impracticable burden is not warranted; . . . ."

In 44 A.L.R. 2d 1253 there is an annotation entitled "Liability of builder or owner of building under construction for injuries received on premises by infant." In the summary of this article it is stated: ". . . the majority of cases have held that the particular conditions or instrumentalities in or about buildings under construction were not the type of condition or instrumentality that could be classified as attractive nuisances. . . ." The cases cited throughout the country back up that statement.

The appellees and the court below rely upon the case of *Patterson v. Palley Mfg. Co.,* 360 Pa. 259, 61 A.

2d 861. There, a fourteen-year old boy was buried under a mass of bricks when a wall of a partially constructed factory building collapsed and fell on him. That case can be clearly distinguished. It did not involve the climbing propensities of a venturesome boy. He did not fall from the wall; the wall fell upon him. Furthermore, there was also expert testimony that the wall was negligently constructed and that its collapse could have been anticipated. There was no such evidence in the present case.

It follows that, like the plaintiff in the *Dragonjac* case, "(1) plaintiffs failed to prove that defendant was negligent and (2) plaintiffs failed to prove by a fair preponderance of the evidence that defendant's negligence, if any, was the proximate cause of the accident and (3) the minor plaintiff and his parents assumed the risk."

Judgments reversed and judgments non obstante veredicto here entered for defendants.

---

DISSENTING OPINION BY HOFFMAN, J.:

I dissent. In my opinion, this case is not controlled by *Dragonjac v. McGaffin Construction & Supply Co.*, 409 Pa. 276, 186 A. 2d 241 (1962).

The Supreme Court in *Dragonjac* was following a long line of cases which hold that liability may not be predicated on mere falling. See, e.g., *McHugh v. Reading Company*, 346 Pa. 266, 30 A. 2d 122 (1943).

In *McHugh*, however, the Supreme Court recognized the difference between falling from a wall and having the wall collapse beneath the person. The Court quoted with approval the following statement from *Coon v. Kentucky & Indiana Terminal Railway R.R. Co.*, 163 Ky. 223, 173 S.W. 325, in which a boy fell from a fifteen foot wall: "It could hardly be said that a retaining wall like the one in question is dangerous. It is not like a stack of lumber composed of separate pieces that are

liable to fall at any time. On the occasion of the accident, *it did not fall or break*." (emphasis added).

Similarly, in *Dragonjac,* the Court noted at p. 278: "At this moment he lost his balance and fell approximately 18 feet between the two sections of the wall. Nicholas testified that there was mud on the wall at the spot where he fell, *but he did not clearly prove that it was the mud which caused him to fall*." (emphasis added). In addition, the Court quoted from the plaintiff's unclear testimony and concluded, "This is inadequate proof by a fair preponderance of the evidence that the mud caused Nicholas to slip."

In the instant case, however, the cause of the fall is clear. Plaintiff lost his balance and was injured because one of the building blocks on which he was standing fell from beneath him. While falling, he attempted to gain a handhold on the top of the wall, but the blocks at which he clutched also gave way.

Based on the testimony at trial, as it is set out in the majority opinion, I believe that the jury was well justified in concluding that defendant was aware that the wall was in dangerous condition, and that this condition was the proximate cause of the accident. While the minor plaintiff may have assumed the risk of falling from the wall, he certainly did not assume the risk of having the wall collapse beneath him.

I would affirm the judgment of the lower court.