GENERAL MOTORS CORPORATION, a corporation of the State of Delaware, Appellant, v. JAMES C. VACCARINI, Appellee.

(*June* 17, 1953.)

WOLCOTT and TUNNELL, Justices, and SEITZ, Chancellor, sitting.

*Rodney M. Layton* (of Richards, Layton and Finger) for Appellant.

*George Tyler Coulson* (of Morris, Steel, Nichols and Arsht) for Appellee.

Supreme Court of the State of Delaware, No. 8, 1953.

TUNNELL, J.:

James C. Vaccarini, the appellee (herein called plaintiff), in the course of his employment with General Motors Corporation, the appellant (herein called defendant), on the 17th day of February, 1951, was accidentally injured in the right eye by a flying steel splinter. The injured eye, as a result of the accident, lost thirty-five (35%) per cent of its vision.

A petition for compensation was thereupon filed with the Industrial Accident Board, the prayer of the said petition being grounded upon subsection (c), Sec. 10, of our Delaware Workmen's Compensation Law of 1917 (Para. 6080, *Revised Code of Delaware* 1935), which reads[1] in part as follows:

"For the loss of an eye, sixty percentum (60%) of wages during one hundred and twenty-five (125) weeks; * * *

"For the loss of a fractional part of the vision of an eye, the compensation shall be for such percentage of the total number of weeks allowed for the total loss of the use of an eye under this subsection (c) as the loss suffered bears to the total loss of an eye." 43 *Del. Laws*, c. 269, § 8.

Following a hearing before the Industrial Accident Board and a finding of facts by that body, the parties agreed upon the com-

---

[1]Now to be found in Title 19 *Del. Code*, § 2326(a).

pensation to be paid for the percentage loss of vision, and their agreement was duly approved by the Board.

The healing of the splinter wound, however, left a white scar upon the pupil of plaintiff's eye, so, on February 4, 1952, about ten months after the filing of the first petition, another petition was presented to the Industrial Accident Board in plaintiff's behalf, this one demanding compensation for the scar. The second petition was based upon subsection (g), Sec. 10, of our Delaware Workmen's Compensation Law of 1917 (Para. 6080, *Revised Code of Delaware* 1935), which reads[2] as follows:

"The Board shall award proper and equitable compensation for serious and permanent facial or head disfigurement; such compensation shall be paid to the employee at the rate of Sixty percentum (60%) of his weekly wages for a period not to exceed one hundred fifty (150) weeks." 45 *Del. Laws*, c. 298.

The fact that the disfigurement was permanent was stipulated, and it has apparently been assumed by both parties to be "serious" within the meaning of the statute. But the claim was resisted by defendant on the legal ground that the eye had sustained only one injury and that the allowance of the compensation award theretofore agreed upon and officially approved had compensated plaintiff for all aspects of that injury, whether functional, esthetic, or otherwise. The Accident Board, nevertheless, allowed plaintiff's second claim, and, on appeal, the Superior Court affirmed. 93 *A.* 2d 739. The appeal before us is from the judgment in the Superior Court.

Defendant is compelled by the clear import of the statutory language to concede that subsection[3] (g), standing alone, would suffice to support the legal conclusion of the Superior Court. It

---

[2]This subsection was put into the law by an amendment adopted in 1945, published as Chap. 298, Vol. 45, *Laws of Delaware*. It presently appears as a portion of Title 19, *Del. Code*, Sec. 2326(f).

[3]This and all the following references simply to some particular "subsection" relate to Sec. 10 of the Act.

seeks to avoid that result, however, by requesting us to scrutinize the statutory setting of this subsection and, on the basis of what defendant points out to us in that setting, to find by "interpretation" that it cannot possibly be held to mean what it at first appears to say.

In the face of what we regard as the clear mandate of the statute, we find no room here for judicial interpretation, but in deference to the sincerity and diligence of counsel, and in order that this opinion may have no more weight as a precedent than it is properly entitled to enjoy, we pause to discuss the defendant's several contentions.

The first argument is not easy to state in what will appear to be a sequence of logically connected propositions. It begins with the assumption that there is a governing policy of the entire Act which controls and limits its scope with inviolable authority, that policy requiring that all awards must be in the nature of compensation for loss of earning power.[4] Therefore, when loss of earning power is once compensated for, it is asserted that the legislature has no power to augment that compensation. The loss of earning power, in this case, says defendant, has already been offset by an award for percentage loss of vision. Subsection (g) was an amendment and was intended to afford a remedy exclusively for those who previously had had no right of recovery at all. Therefore, it argues, there is no basis for additional or supplemental compensation on account of disfigurement.

We know of no authority, short of the state and federal constitutions, which can thus limit the force of legislative pronouncements. Inquiry as to the validity of assuming this supposed policy, or the testing of subsection (g) against it if it exists, would, therefore, serve no useful purpose.

Nor do we see any basis for defendant's contention that the loss of earning power from loss of vision alone must

---

[4]Contrary to the plain statement in subsection (c), which provides a schedule of compensation "* * * regardless of the earning power of such injured employee after such injury * * *."

be equivalent to the loss of earning power when there is also facial disfigurement, so that compensation for the former constitutes compensation also for the latter. It would seem to us that facial disfigurement, where it occurs, may very reasonably have been thought to cause *additional* loss of earning power.

Further, the assumption that subsection (g) is not designed to provide any additional compensation for those who already had some right of recovery is wholly unwarranted. This simply postulates as a premise the very principle which the present inquiry is designed to explore.

We find no merit in the first argument.

It is next urged that if the framers of the statute had intended to provide for additional compensation in cases of injury where a loss of function and a disfigurement occur in the same member, they would have said so. This argument is based upon the fact that in subsection (c), one case where additional compensation was intended, the legislature used this language:

"* * * Compensation for the foregoing, permanent-partial injuries shall be paid in addition to the compensation provided for in Subsection (a) and Subsection (b) of this section." *Del. Laws,* c. 190.

Defendant argues that since in one case the legislature took the trouble in the statute to explain that allowance of compensation was "in addition" to the compensation elsewhere provided, therefore, in all cases, even in supplemental amendments, where such explanation was not made, no accumulation was intended.

Respectful as we must be of the time-honored rules of statutory construction, we cannot bring ourselves to hold that if the legislature has expressly added something to the compensation tables of the Act, the addition shall have no force unless the legislature expressly characterizes it as an addition. Reading the statute as a whole, we regard the explanatory language in the one instance as either fortuitous, and, therefore, without significance outside the section in which it appears, or necessary

because of a problem present there but not here. It is apparent that compensation for disability resulting from injury to some specific member of the body may duplicate compensation based upon a completely general provision covering "total" or "partial" disability. A court, observing that potential duplication, might have declined to permit it in the absence of clear language showing that it was intended.[5] On the other hand, compensation for a percentage loss of vision would not appear, *prima facie* at least, to duplicate an allowance for facial disfigurement.

We see no merit in defendant's second argument.

Defendant then presents this chain of reasoning. The loss of any member of the body listed in subsection (c), Sec. 10, or the loss of function of any such member of the body, necessarily causes some disfigurement, e. g., loss of a hand, so that it would be absurd to say that no injuries are disfiguring except those to the head or face. The legislature could not have overlooked so obvious a fact. Therefore, it is contended, the compensation for each member listed in subsection (c) must of necessity include compensation for the concomitant disfigurement. The eye is one of the members listed in (c). Therefore, defendant reasons, disfigurement to the eye must be compensated for[6] in the schedule of subsection (c). The language of subsection (g), it suggests, can be reconciled with the foregoing reasoning and conclusion by construing the words "head" and "facial", where they appear in the statute, as having application only to the "non-functional surface areas" of the head or face.

But who can know whether disfigurement from loss of a hand has ever been regarded as compensable in the judgment of the General Assembly? Perhaps it has not, and, if not, perhaps the latent inequity here is not in a duplication of awards at all,

---

[5] We ignore the directly contradictory language in subsection (b) of section 10, 19 *Del. Code,* § 2325, apparently saying that no such duplication is intended.

[6] Even, apparently, when there is no disfigurement, as might sometimes be the case in the event of loss of vision.

but in an unfair failure up to this point to recognize any damage to an employee's appearance, and, consequently, to his earning power, which results from such injuries as loss of a hand. These remarks, of course, are purely speculative, since we have no way of knowing the answers in the absence of direct pronouncements on those points. All we are told is that facial or head disfigurement is compensable in its own right. That single item of information, however, is dispositive of the present problem.

Defendant's right to urge upon us its interpretation of the statute as having reference only to the "non-functional surface areas" of the head and face was sharply challenged by plaintiff's counsel. It was, he said, an entire new theory of the case, and thus precluded here under the rule of *Stephenson v. Commonwealth & Southern Corporation,* 19 *Del. Ch.* 447, 168 *A.* 211. But since we find the suggested interpretation itself to be wholly unwarranted restriction upon clear statutory language, it is not necessary for us to determine whether the argument is or is not available from a procedural point of view.

We overrule defendant's third argument.

Defendant next advances this line of reasoning. As compensation for "total disability", subsection (a) of section 10, 19 *Del. Code,* § 2324, accords 60% of wages (with a ceiling of $30 per week) for the duration of disability. We must regard the allowance for total disability as the ultimate allowance. If separate items of compensation were allowed for vision loss and for facial disfigurement, however, you can have two distinct allowances, each for 60% of the wages, one for 125 weeks and one for 150 weeks. This, then, means that an eye injury can, for a while at least, produce more compensation than would be allowed during that interval for total disability—a conclusion which can be reached, says defendant's counsel, only in "purblind ignorance" of the policy of the Act and by "foisting a ridiculous interpretation upon it".

At the risk of having the court's wisdom appraised in the unflattering fashion suggested by counsel, we are, nevertheless,

constrained to record that we see no inherent absurdity in recognizing disfigurement as an independent basis of recovery, even though, for a limited number of weeks, an injured man might recover more compensation than his wages would have amounted to had he not been injured, or, for the time being, more than if he had in some other fashion been totally disabled.

Moreover, the law may well be intended to supplement the awards in cases of total disability where disfigurement is also present; and, if that be so, an award for a total disability accompanied by disfigurement would not suffer by such a comparison as defendant has made. As previously stated in another connection, though, it may be possible to establish a distinction between subsections (a) and (b), on the one hand, and subsection (c), on the other hand, and we are not required to pass upon the interrelation of subsections (a) and (g) in order to settle the narrow issue presently before us.

We, therefore, reject defendant's fourth argument.

Finally—for this phase of the argument—, defendant points out that the legal interpretation adopted by the court below would create a situation in which a claimant could recover nearly three times as much for loss of vision in one eye, with disfigurement, as he could recover for loss of vision in the eye without disfigurement—more than twice as much as for the loss of a foot, and nearly twice what is allowable for loss of a hand.

We are less certain than defendant's counsel that the relative sizes of these awards are manifestly absurd, and individuals suffering these respective disabilities might not instantly agree upon any different ratio. But if, as defendant contends, there is serious maladjustment of the awards allowable, as among the various injuries—a matter which we, of course, do not decide—complaint as to these maladjustments could very appropriately be addressed to the General Assembly. We are not the proper agency to consider defendant's fifth argument.

Both parties urge us to take note of decisions from outside our own jurisdiction. Plaintiff asks us in particular to follow

*Case v. Pillsbury, D. C. N. D. Cal.* 1943, 52 *F. Supp.* 882, affirmed, 9 *Cir.*, 1945, 148 *F.* 2d 392; defendant cites *Brown v. State Workmen's Insurance Fund,* 131 *Pa. Super.* 226, 200 *A.* 174. But, as we view the matter, decision of this case depends so peculiarly upon the terms of our own statute that we have elected not to discuss these opinions in detail. If the above cases cannot be reconciled, we favor the view adopted by the federal courts in the *Pillsbury* case. As noted above, however, we rest our decision upon our own statute, not upon precedent.

We, therefore agree with the learned judge of the court below that to read subsection (g) as defendant wants it read would necessarily involve introducing into its language a condition which the General Assembly did not see fit to put there. This portion of the statute makes sense as it is, and there is, consequently, no warrant for reading anything else into it.

The judgment of the Superior Court will be affirmed.