## Bruhn v. L.B. Smith, Inc.

*Anna Marie Sossong,* for plaintiffs.
*Joseph C. Phillips,* for defendant.

HOFFER, *J.,* July 7, 1993—On May 5, 1990, Justin R. Bruhn, then 14 years old, slipped on a rock as he was climbing in an abandoned quarry owned by L. B. Smith Inc. The quarry had not been in operation for many years, and was partially filled with water. The day of the accident was the first time Justin had visited the quarry; his companion had been there before. Neither of the boys had the owner's permission to be

on the property. The defendant posted "no trespassing" signs at various locations around the quarry.

When Justin fell, his companion left the scene in order to seek help. A rescue crew of paramedics brought Justin up from the quarry. In the fall he suffered a fractured pelvis; he spent several months in hospitals. From July to November 1990, Justin took physical therapy as an outpatient.

On October 10, 1990, the plaintiffs brought suit against the defendant, alleging negligence, inter alia, in failing to maintain the property in a safe manner.[1] The defendant's preliminary objections were denied, save the motion to strike paragraph 32(h) of the complaint, and the case moved through discovery. Based on the facts revealed through discovery, the defendant now moves for summary judgment.

## DISCUSSION

Summary judgment is properly granted only in cases that are free from doubt. *Elder v. Nationwide Insurance Co.,* 410 Pa. Super. 290, 599 A.2d 996 (1991). The party moving for summary judgment must establish that no genuine issue of material fact exists, and that he is entitled to judgment as a matter of law. *Carns v. Yingling,* 406 Pa. Super. 279, 594 A.2d 337 (1991). "[T]he record must be examined in the light most favorable to the non-moving party, accepting as true all well-pleaded facts in its pleadings and giving that party the benefit of all reasonable inferences drawn therefrom." *Godlewski v. Pars Manufacturing Co.,* 408 Pa. Super. 425, 430, 597 A.2d 106, 109 (1991).

---

1. The plaintiffs have since withdrawn their claim for negligent infliction of emotional distress.

A fact is "material" if it directly affects the disposition of the case. *Allen v. Colautti,* 53 Pa. Commw. 392, 417 A.2d 1303 (1980). The presence of disputed facts not material to any critical issues raised in the petition for relief will not preclude summary judgment. *Pierce v. Com., Pennsylvania Bd. of Probation and Parole,* 46 Pa. Commw. 507, 406 A.2d 1186 (1979). Our review of the record discloses no dispute as to any material fact. After examination of the record, we hold that the defendant is entitled to judgment as a matter of law.

The defendant argues that it owed no legal duty to the plaintiffs, and hence should be granted summary judgment. Both the plaintiffs and the defendant rely on the Restatement (Second) of Torts §339. The revised version of the Restatement, omitting the former reference to "young" children, was adopted by our Supreme Court in *Jesko v. Turk,* 421 Pa. 434, 219 A.2d 591 (1966). Section 339 is titled "Artificial Conditions Highly Dangerous to Trespassing Children."

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

As the *Jesko* court pointed out, "[a]ll five requirements of section 339 must be satisfied if a possessor of land is to be held liable." *Id.* at 437, 219 A.2d at 592. With respect to summary judgment, where the defendant is the moving party, he may point to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action. *Godlewski, supra,* at 431, 597 A.2d at 109.

Although not raised directly by the parties, there is the preliminary issue of determining whether the quarry constituted an "artificial" condition. There is no definition of the word "artificial" in the Restatement; consequently, courts have turned to principles of statutory construction in deciding whether the term applies. We look to courts' interpretations of other Restatement sections for guidance.

In *Piekarski v. Club Overlook Estates,* 281 Pa. Super. 162, 187, 421 A.2d 1198, 1211 (1980), the Superior Court acknowledged that it could find no Restatement definition of "artificial." The court examined comment b to section 1368 of the Restatement (Second) of Torts, which defined "natural condition of land." *Id.* at 188, 421 A.2d at 1211. Such condition is one "[that] has not been changed by any act of a human being. ..." *Id.* By negative implication, an artificial condition is a condition which *has been* changed by some human activity—directly or indirectly. The Superior Court reasoned that a jury could find that a gully was altered

in character by the installation of a road and drainage system so as to constitute an "artificial" condition. It then went on to cite with approval an Arizona appellate decision finding that a gully was an artificial condition if created by irrigation run-off.[2] *Id.* Similarly, in *McCarthy v. Ference,* 358 Pa. 485, 58 A.2d 49 (1948), our Supreme Court imposed liability when an eight-ton rock fell from the defendant's hillside to the highway, striking the vehicle in which the plaintiff was riding. Interpreting the language of section 368, the court found that the injury was caused by an artificial condition—the cutting of the hillside to form the road.

Cutting away a hillside for road building is scarcely distinguishable from excavating minerals from a quarry, for the purposes of altering the land. The salient difference lies in the purpose for which the enterprise is undertaken. Both activities alter the character of the natural landscape; and both activities technically may be classified as excavation. Section 368 of the Restatement (Second) of Torts, dealing with conditions dangerous to travelers on adjacent highways, speaks of "an excavation or other artificial condition." Taken together, the words "or other" unmistakably imply that an excavation constitutes an artificial condition on the land.

In *Frankel v. Burkes Excavating, Inc.,* 269 F. Supp. 1007, 1009, 1014 (1967), *aff'd,* 397 F.2d 167 (3d Cir. 1968), two boys fell into a quarry hole partially filled with water. The hole was not visible to one standing off the property. The plaintiff sued for the wrongful death of the two boys, aged seven and eight, who drowned in the hole. Recovery was denied on the ground that the landowner could not have been aware of the presence of trespassing children. Much trial testimony

---

2. See *Clarke v. Edging,* 512 P.2d 30 (Ariz. App. Ct. 1973).

was devoted to determining whether the quarry hole was an artificial condition. When all the evidence was presented, there was no factual dispute that the hole was man-made, *i.e.,* artificial. *Id.* at 1113.

From our reading of the Restatement and relevant case law, we conclude that the abandoned quarry constituted an "artificial" condition within the meaning of Restatement (Second) of Torts §339.

Next we examine the record to ascertain whether any issue of material fact exists as to the elements of Restatement (Second) of Torts §339. There is no dispute that the defendant, through one of its agents, Rutkowski, had actual knowledge that children trespassed on or near the quarry. Rutkowski related that he expelled children from the premises on a number of different occasions. (Deposition of Martin Rutkowski, p. 26.) A separate but related question is whether the defendant knew or should have known that the quarry "involved an unreasonable risk of death or serious bodily harm to such children ..." Restatement (Second) of Torts, §339(b). In *McHugh v. Reading Co.,* 346 Pa. 266, 30 A.2d 122 (1943), the Pennsylvania Supreme Court suggested that a risk of death or serious bodily harm is not unreasonable where children are likely to recognize and understand the risk. In order to pass on section 339(b), therefore, we must evaluate whether section 339(c) is satisfied. The issue is whether Justin, because of his youth, did not realize the danger involved in climbing in a quarry. If he did not realize the risk, as we interpret *McHugh,* the risk may be considered unreasonable under section 339(b).

The reporter's note to section 339 addresses the elimination of the former limitation of the section to "young" children:

"There seems now to be general agreement that the age of the child is important only as it bears on whether he does, and can be expected to realize the risk. There

are now a considerable number of decisions in which the rule stated has been applied to children over the age of 13 years. ..."

In examining the case law interpreting section 339, it becomes evident that liability follows where a child is too young to discover or appreciate the danger which ultimately causes injury. Comment j to the Restatement (Second) provides a number of illustrations: *King v. Lennen,* 348 P.2d 98 (Cal. 1959) (1 1/2-year-old child falling into a swimming pool); *Beaston v. James Julian, Inc.,* 120 A.2d 317 (Del. 1956) (4-year-old child falling into a sewer pit of water); *Cockerham v. R.S. Vaughan, Inc.,* 82 So.2d 890 (Fla. 1955) (2 1/2-year-old child falling into a pit); *Gallagher v. City of Wichita,* 296 P.2d 1062 (Kan. 1950) (5-year-old falling into a pit full of water).

The Restatement (Second) of Torts has been found to apply to older children as well. In *Hughes v. Quarve and Anderson Co.,* 338 N.W.2d 422, 423-26 (Minn. 1983), a 16-year-old boy dove into a quarry pond, striking his head on the irregular sand bottom. He was rendered quadriplegic. In the suit that followed, the trial court instructed on section 339. The jury returned a plaintiff's verdict; damages, however, were reduced in proportion to the plaintiff's comparative fault. On appeal the defendants argued that the plaintiff should have been considered an adult trespasser. The Supreme Court of Minnesota opined that the Restatement does not set age limits, and that the jury was free to find the plaintiff a child trespasser.

Regardless of the child's age, each case must be decided on its particular facts, the critical factor being the child's ability *vel non* to recognize a given risk.

On this point a Washington state case is instructive. *McDermott v. Kaczmareck,* 469 P.2d 191, 198 (Wash.

App. Ct. 1970). There a 7-year-old boy died when he fell from a cliff located in an abandoned quarry. The trial court entered summary judgment in favor of the defendant, and the plaintiff appealed. The Washington Court of Appeals affirmed, holding that the quarry was not an attractive nuisance, and that the boy should have been aware of the risk involved in climbing. Moreover he was found to have been old enough to appreciate the danger of falling.

The Pennsylvania Supreme Court has concluded that even young children should realize the risk of falling. In *McHugh, supra* at 269, 30 A.2d at 12, the court stated:

"No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity... . Certainly a normal child nearly 7 years of age—indeed any child old enough to be allowed at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of the spirit of bravado ... ."

In *McHugh,* a 6-year-old girl climbed a bridge abutment in order to sit on an ornamental cornice known as the "king's throne." As she descended, she lost her footing and fell to the street below. Applying the Restatement of Torts §339, the court held that the property owner owed no legal duty to the child: she was old enough to have understood the danger involved.

Other Pennsylvania cases support the proposition that children should appreciate certain dangers. In *Jennings v. Glen Alden Coal Co.,* 369 Pa. 532, 87 A.2d 206 (1952), a 13 1/2-year-old boy drowned in water accumulated in a strip mining pit. There the court stated: "We have repeatedly held that the perils contained in

a body of water are obvious to children at an early age." *Id.* at 536, 87 A.2d at 208. In *Dragonjac v. McGaffin Construction & Supply Co.,* 409 Pa. 276, 186 A.2d 241 (1962), a 10-year-old boy fell from the newly constructed foundation of a school building. Our Supreme Court reversed the verdict in favor of the plaintiff: "If plaintiff can recover in this case, every owner of property, no matter how very small, would have to barricade his property or become an insurer. This is certainly not the law." *Id.* at 278, 186 A.2d at 242. *Slavish v. Ratajczak,* 277 Pa. Super. 272, 419 A.2d 767 (1980) involved a 5-year-old boy. Playing at a friend's house, he fell from the unrailed segment of a landing. The court found that he should have realized the risk of falling.

The plaintiffs argue that the danger Justin encountered on the quarry slope was undiscoverable or "latent." More specifically, they contend that the rock which gave way beneath Justin constituted a latent defect for which the defendant should be held liable. Black's Law Dictionary (6th ed. 1991) defines a "latent defect" as

"A hidden or concealed defect. One which could not be discovered by customary observation or inspection; one not apparent on the face of the goods, product, or document, etc."

Our Supreme Court discussed the matter of latent defects in *Malloy v. Pennsylvania R.R. Co.,* 387 Pa. 408, 128 A.2d 40 (1956). That case dealt with the death of a 10-year-old boy who was found dead near the railroad tracks at the foot of a precipice. The trial court entered judgment on the verdict for the plaintiffs. On appeal, the court held that the evidence was insufficient for the jury to find negligence, or, more specifically, proximate cause. Judgment N.O.V. was entered for the defendants. The court wrote:

"Liability to trespassing children has uniformly been limited to accidents arising from *latent* dangers, such as unguarded machinery, live wires, pits, or open trap doors." *Id.* at 416, 128 A.2d at 44.

\*\*\*

"[A landowner's duty] does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize." *Id.*

The plaintiffs attempt to bring this case within the language of *Malloy* by maintaining that Justin fell due to a latent danger *in* a pit. We must reject this as a semantic argument. We believe that the *Malloy* court intended to provide examples of dangers that may not be obvious to children, such as falling *into* a pit, the presence of which is not apparent. Compare *Frankel v. Burkes Excavating, Inc.,* 269 F. Supp. 1007, *aff'd,* 397 F.2d 167 (3d Cir. 1968) (A jury found that the boys, aged 7 and 8, did not realize the risk of falling into a quarry hole which was not readily visible). The pictures of the accident site in the present case do not depict a "pit" in the sense of a mine shaft, or sink hole. Rather, they show an area better characterized as the rocky terrain of an open slope.

The risk of slipping on rocky terrain on the slope is self-evident. The rock on which Justin placed his foot was not "hidden" because he knew to place his foot on it. Therefore, it could not have constituted a latent defect.

We are aware of no Pennsylvania appellate decision containing facts closely analogous to this case. We find persuasive, however, a Delaware County decision whose factual setting bears some resemblance. In *Armstrong v. DiTomasso,* 48 Del. 88 (1960), the 9-year-old plaintiff

and his friend rode their bicycles to a quarry. The excavation itself was not fenced in, and there were no warning signs posted. Both boys walked to the edge of the quarry, the wall of which was 40 feet deep, and decided to climb down. As the companion was descending, the ground gave way beneath the minor plaintiff. He fell the full 40 feet to the bottom, sustaining physical injuries, but managing to climb out and ride his bicycle home.

*Armstrong* went before the court on the plaintiffs' motion to remove a nonsuit. The court noted that upon cross-examination at trial the minor plaintiff conceded that he knew he would be hurt if he fell. *Id.* at 92. The court found that his testimony refuted the proposition that the quarry constituted an unrealized danger.

Like the plaintiff in *Armstrong,* Justin conceded that he understood the risk involved in climbing at the quarry. (Deposition of Justin Bruhn at pp. 32-3, 38, 42-3.) At his deposition Justin testified as follows:

"Defense Counsel: Did you know that when you climbed up the rock face there was a risk you could fall?

"Justin: Well, there is—I could have fell. I didn't think it was a great risk, though.

"Defense Counsel: But you did know that it was a risk?

"Justin: It was obviously—you know." (Deposition at 42-3.)

The above colloquy reveals that Justin did, in fact, appreciate the risk of falling. There is thus no factual dispute that section 339(c) of the Restatement (Second) of Torts is not satisfied. The defendant is entitled to judgment as a matter of law because the defendant had no legal duty to the plaintiffs. It is unnecessary

to consider subsections (d) and (e) because "[a]ll five requirements of 339 must be satisfied if a possessor of land is to be held liable." *Jesko, supra* at 437, 219 A.2d at 592. Summary judgment will be entered for the defendant.

## ORDER

And now, July 7, 1993, after careful consideration of the parties' briefs and oral arguments, the defendant's motion for summary judgment is *granted.*